# ORIGINAL

Ray K. Shahani, Esq. SBN 160,814
Attorney at Law
Twin Oaks Office Plaza
477 Ninth Avenue, Suite 112
San Mateo, California 94402-1854
Telephone: (650) 348-1444
Facsimile: (650) 348-8655

Attorney for Plaintiff
ARTHUR D. SULIT, an individual

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR D. SULIT, an individual | Case No: |
| Plaintiff, | COMPLAINT FOR COPYRIGHT INFRINGEMENT, CONVERSION, INTERFERENCE WITH PROSPECTIVE ADVANTAGE, DEFAMATION AND UNFAIR COMPETITION |
| vs. | |
| SOUND CHOICE, INC., a Delaware corporation, DEREK SLEP, an individual, KURT SLEP, an individual, JONATHAN BANKS, an individual | [28 U.S.C. §§ 1331, 1338, 1367, 1498] |
| Defendants. | [JURY TRIAL DEMANDED] |

### First Claim

1.     Plaintiff ARTHUR D. SULIT, an Individual ("SULIT.") for his claims against defendant SOUND CHOICE, INC., a Delaware corporation ("SCI"), DEREK SLEP, an individual, KURT SLEP, an individual, JONATHAN BANKS ("BANKS"), an individual, allege the following:

### Jurisdiction and Venue

2.     This Court has subject matter jurisdiction over this Claim pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 1498 because this is an action which involves claims arising under the U.S. copyright laws, as well as related state claims for unfair competition.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) and 1400 in that defendants, and each of therm, are subject to personal jurisdiction in this district and this

1   is the district in which acts of copyright infringement, conversion, interference with prospective

2   advantage, slander, RICO violations and unfair competition were committed. Venue is also

3   proper because Defendants' sell ringtone downloads and other ringtone-related products and

4   services over the internet and into California regularly and on a systematic basis.

5                    **The Parties**

6       4.       SULIT is an individual who resides in Palo Alto, California.

7       5.       Upon information and belief, defendant SCI is a Delaware corporation with its

8   principal place of business at 14100 South Lake Drive, Charlotte, North Carolina.

9       6.       Upon information and belief, Defendant DEREK SLEP resides in Charlotte

10   and/or the greater Charlotte area and is an officer of SCI in Charlotte, North Carolina.

11       7.       Upon information and belief, Defendant KURT SLEP resides in Charlotte and/or

12   the greater Charlotte area and is an officer of SCI in Charlotte, North Carolina.

13       8.       Upon information and belief, Defendant BANKS is an independent contractor

14   who provides services to SCI who resides in Charlotte and/or the greater Charlotte area of North

15   Carolina.

16                     **The Facts**

17       9.       Prior to December, 2003 and as early as 2001, SULIT had created original

18   software and scalable website architectures for manipulating, editing and distributing audio and

19   image files, which were later used in collection with later items he would author, to form a

20   system for distribution of static ringtones, i.e., pre-recorded, pre-cut ringtones, which utilized

21   neither file sharing or CD ripping functionality, to automatically send ringtones to subscriber's

22   mobile telephones.

23       10.       Between April 2004 and June 2004, SULIT had developed stand-alone software

24   for use on a desk top computer which enabled a user to select an MP3 file from CD or hard disk,

25   rip a 10 to 30 second portion of the music, and send it to a mobile telephone as a new ringtone.

26   This stand-alone software was not dependent on the use of an internet browser for its

27   functionality.

28

11.     Between June 2004 and August 2004, SULIT developed software which operated as a plug-in to an internet browser which enabled a user to insert a CD and/or mount an MP3 music or other data file onto a user's hard drive, snip between about 10 and about 30 seconds of music or other sounds therefrom, and send it to the user's mobile telephone.

12.     By about May or June of 2004, SULIT started to develop the specification for a separate website which utilized the plug-in software.

13.     By about July, 2004, SULIT had developed the plug-in software based on Microsoft Corporation's "ActiveX" programming tools. This software, which enabled a user to rip a CD through the internet browser of a personal computer, was the subject of a U.S. Provisional Patent Application filed _[CONFIDENTIAL]_  having serial number _ _[CONFIDENTIAL]_  identifying SULIT as the sole author thereof.

14.     By about June 2004, SULIT had added functionality to the plug-in and the stand-alone software which provided a visual display of the waveform to the desktop version associated with the ringtone as well as the ability to select an end point, i.e., vary the length of time of the ringtone, and by about October 2004 functionality of a slider and digital time display to control start time of the ringtone snip to both the Desktop version and the plugin software.

15.     By about November of 2004, SULIT also created functionality in the plug-in and stand-alone software which permitted the use of security measures which would render the software inoperable in the event of piracy of copyrighted digital music. This functionality allowed the software to comply with provisions of the Digital Millennium Copyright Act of 1998, 17 U.S.C. Section 512 et seq. related to duplication and transmission of digital music.

16.     By about December of 2004, SULIT started to develop further aspects of the graphical user interface for the stand-alone software. In particular, SULIT added programming code which provided a "racecar lights"-type or "Christmas tree"-type sequence of flashing and solid red and green lights for indicating progress through the process steps of the ringtone software.

17.     In developing the downloadable ringtone software, SULIT purchased

1  proprietary programming tools from a Russian business entity named NCT. These tools were

2  primarily intended for use in ripping music from CDs. SULIT compiled these tools in a certain,

3  specific order resulting in a novel and unique compilation, original expression, of DLLs. SULIT

4  obfuscated the identity of these DLLs by renaming them with proprietary, unique identifiers.

5          18.      At no time did SULIT provide SCI or any other named defendants with the

6  software code or the keys to the obfuscated set of DLLs.

7          19.      In about September of 2005, SCI released a version of SULIT's downloadable

8  ringtone software. This software, when loaded onto a host computer, utilized the software engine

9  developed by SULIT, and CRMail, another SULIT-owned component which was modified by

10  SULIT to automatically send ringtones over the internet, complete with the renamed and

11  obfuscated set of DLLs purchased from NCT. Furthermore, the software security features

12  including the ability to track downloading of copyrighted digital music for purposes of paying

13  royalties to original performers and compliance with the Digital Millennium Copyright Act of

14  1998 were and remain disabled.

15          20.      On about October 27, 2005, SULIT filed his Application for Registration of

16  Copyright having Control No. 713348317 entitled "MyMFCCDRipperSock27c Desktop

17  Windows CD Ripper-Ringtone-Snipper-Sender (a.k.a. 'SnipTunes' or 'Ringeroo')". **Exhibit A**.

18          21.      On about October 27, 2005, SULIT filed his Application for Registration of

19  Copyright having Control No. 713348398 entitled "Easy RingTone Maker Website". **Exhibit B**.

20                              **FIRST CAUSE OF ACTION**

21                                  **(Copyright Infringement)**

22          22.      SULIT repeats and realleges Paragraphs 1 through 21 above, and incorporates

23  them herein by reference as if set forth in full.

24          23.      Plaintiff is the owner of copyrighted software, website and publicity

25  information regarding his downloadable ringtone maker.

26          24.      Defendants have copied significant and substantial portions of plaintiff's

27  copyrighted materials without authorization, permission, consent or approval of plaintiff.

28

Exhibit C

25.    Plaintiff has complied in all respects with 17 U.S.C. §§ 101 et seq., and secured the exclusive rights and privileges in and to the copyright of the above-referenced work. Plaintiff has been and still is the sole proprietor of all rights, title, and interest in and to the copyright in his respective work as referenced above.

26.    Defendants' conduct, which includes sale of ringtone download and other ringtone-related products and services over the internet and into California, violates the exclusive rights belonging to plaintiff as owner of the copyrights, including without limitation plaintiff's rights under 17 U.S.C. § 106.

27.    On information and belief, plaintiff alleges that, as a direct and proximate result of their wrongful conduct, defendants have realized and continue to realize profits and other benefits rightfully belonging to plaintiff. Accordingly, plaintiff seeks an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

29.    Defendants' infringing conduct has also caused and is causing substantial and irreparable injury and damage to plaintiff in an amount not capable of determination, and, unless restrained, will cause further irreparable injury, leaving the plaintiff with no adequate remedy at law.

30.    On information and belief, defendants have willfully engaged in, and are willfully and intentionally engaging in, the acts complained of with oppression, fraud, and malice, and in conscious disregard of the rights of plaintiffs. Plaintiffs are, therefore, entitled to the maximum statutory damages allowable and attorneys fees.

32.    As a consequence of this dispute between the parties as to the rights, title, and interest in the copyrighted materials described above, and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, plaintiffs also seek a resolution of this ongoing controversy by a declaration of this Court as to the rights of the respective parties in this matter.

## SECOND CAUSE OF ACTION

### (Conversion)

33.     SULIT repeats and realleges Paragraphs 1 through 32 above, and incorporates them herein by reference as if set forth in full.

34.     Between about January 25, 2005 and April 1, 2005, in SULIT's first personal meeting with SCI and the other Defendants, SULIT worked as an independent software programmer at the Defendant SCI's offices in Charlotte, North Carolina. During that time period, Defendants SCI, DEREK SLEP and KURT SLEP, by and through their employees and independent contractors, including Defendant BANKS, gained access to SULIT'S laptop computer over SCI's wireless network.

35.     At no time ever did SULIT give permission for any of defendants SCI, DEREK SLEP and KURT SLEP, or BANKS, to access SULIT'S laptop computer over SCI's wireless network.

36.     Upon information and belief, Defendants SCI, DEREK SLEP and KURT SLEP, by and through their employees and independent contractors, including Defendant BANKS, gained access to files and data developed and written exclusively by SULIT, and residing on SULIT'S laptop computer, over SCI's  network. Defendants did not have permission to make copies of any part of Plaintiff's software code and GUI, nor did any of Defendants ever have permission to copy, reproduce, or use Plaintiff's software code and GUI.

37.     Until the time Defendants misappropriated and converted Plaintiff's software code and GUI, Plaintiff was the sole, lawful possessor of the software code and GUI and no other entity was entitled to its possession.

38.     Upon information and belief, Defendants converted the software code and the GUI to their own use by incorporating it into Defendant's website without permission of Plaintiff. Defendants exercised this right of ownership over the software and GUI even though Defendants did not have the right to do so.

39.     All rights of ownership to the software code and GUI belong to Plaintiff. At no time did Defendant have any right to take, coy, convert, or otherwise use Plaintiff's software code and GUI.

40.     Upon information and belief, Defendants have refused to cease the use of and return Plaintiff's software code and GUI after Plaintiff has made such demand.

41.     Plaintiff has been damaged as a result of Defendant's conversion of Plaintiff's software code and GUI. Plaintiff has lost sales and had to compete with it's own work. Plaintiff is entitled to recover damages from Defendant for unlawful conversion of Plaintiff's property.

### THIRD CAUSE OF ACTION

**(Interference with Prospective Advantage)**

42.     SULIT repeats and realleges Paragraphs 1 through 41 above, and incorporates them herein by reference as if set forth in full.

43.     SULIT had created an existing economic relationship between himself and third persons, i.e., business associates and business partners, the economic relationship containing economic benefit to SULIT.

44.     SULIT had created an economic relationship between himself and third persons, i.e., business associates and business partners, the economic relationship containing the probability of future great economic benefit to SULIT.

45.     Defendants SCI, DEREK SLEP, KURT SLEP and BANKS had actual personal knowledge of the existence of the economic relationship between said third persons and SULIT.

46.     Defendants committed intentional acts designed to disrupt the relationship, including demeaning the quality of SULIT'S software code and GUI, advising said third persons not to honor agreements to compensate SULIT according to written terms of those agreements with third persons, advising said third parties to not engage in business dealings with SULIT, threatening SULIT and third parties in various ways and at various different times, etc.

47.     Defendants intentional and wrongful acts caused actual disruption of the relationship between SULIT and said third persons.

48.     Economic and other damages to Plaintiff SULIT due primarily to interruption of the relationship with said third persons have been proximately caused by the acts of the defendant.

**FOURTH CAUSE OF ACTION**

**(Defamation: Libel and Slander)**

49.     SULIT repeats and realleges Paragraphs 1 through 48 above, and incorporates them herein by reference as if set forth in full.

50.     Defendants SCI, KURT SLEP, and BANKS intentionally made a false and defamatory statement concerning SULIT, which included derogatory statements regarding his abilities as a programmer and businessman.

51.     The defamatory statements were transitory, non-fixed oral and other representations.

52.     The defamatory statements were also printed or in a fixed medium.

53.     The statements were not privileged in any way, and the false statements were published to third parties, including SULIT'S business partners and business associates.

54.     The defamatory statements caused irreparable injury and damage to the Plaintiff.

**FIFTH CAUSE OF ACTION**

**(Unfair Competition )**

55.     SULIT repeats and realleges Paragraphs 1 through 54 above, and incorporates them herein by reference as if set forth in full.

56.     The Defendants, and each of them, conduct alleged above constitutes unlawful, unfair or fraudulent business practices in violation of California Business & professions Code §§ 17200 et seq.

57.     The Defendants, and each of them, have continuously engaged in unfair trade practices and unfair competition against Plaintiff to Plaintiff's irreparable damage.

**ADDITIONAL CAUSES OF ACTION**

58.     Plaintiff reserves the right to amend the facts and allegations of these pleadings as necessary and as indicated by the facts as revealed to Plaintiff through discovery and as permitted by FRCP, the laws of this State and the United States, and as allowed under the

1   notions of fair play and substantial justice.

2                                            **PRAYER**

3        Wherefore plaintiff demands judgment as follows:

4        1.        The Defendants, and each of them, be preliminarily and permanently enjoined

5   against infringement of said copyrights.

6        2.        The Defendants, and each of them, render an accounting for all profits from use

7   of the software by members of the public and from downloading of ringtones which Defendants,

8   and each of them, received by infringing said copyrights.

9        5.        Ordering an injunction permanently enjoining each of the Defendants

10  collectively and individually, their agents, directors, officers, servants, owners, shareholders and

11  employees, and all those in privity with the named Defendants from using the software and GUI

12  or any variant thereof in any manner, directly or indirectly, and from marketing, advertising,

13  labeling, promoting, exploiting, for ringtone services or similar or related goods or services, and

14  from engaging in unfair competition against SULIT and from defaming SULIT in connection

15  with the providing of software coding products or services.

16       6.        Ordering an accounting of the gains and profits realized by the Defendants

17  collectively and individually from all the aforementioned wrongful acts;

18       7.        Requiring the Defendants collectively and individually to cause to be destroyed

19  any material in their possession bearing a reproduction or colorable imitation of the software and

20  GUI or any variant thereof, including without limitation: signs, brochures, packages, wrappers,

21  advertisements, flyers, testimonials, labels, invoices, fax cover sheets, computer files, electronic

22  data, computers and computer servers, digital storage media, floppy disks, CDs, DVDs, and any

23  other printed material.

24       8.        Awarding SULIT punitive damages from the Defendants collectively and

25  individually to punish Defendants for their willful and reckless indifference to the rights of other

26  exemplified by their willful misappropriation of Plaintiff's software and GUI or any variant

27  thereof and for the unfair competition practiced by Defendants against Plaintiff;

28

9.      Ordering Defendants, under 15 U.S.C. § 1116, to file with the Court and serve on plaintiff and its attorney(s) of record a report in writing under oath setting forth in detail the manner and form in which Defendants collectively and individually have complied with the terms of the judgment, and injunction; and

10.     For damages sufficient to compensate plaintiff for copyright infringement in excess of $1,000,000.00.

11.     For damages for lost business profits, profoundly depressed financial situation resulting in adverse judgments, bad credit, lack of utilities, past due rent, other amounts past due and owing, and other costs to develop the software and GUI.

12.     For treble damages and for an award of special damages.

13.     For costs and reasonable attorney fees of the subject litigation and interest as allowable by law, including but not limited to pursuant to 17 U.S.C. § 505.

14.     For such other and further relief as the court may deem just and proper.

Respectfully submitted,

RAY K. SHAHANI
ATTORNEY AT LAW

Dated: January 5, 2006          By: _____
                                     Ray K. Shahani, Esq.
                                **Attorney for Plaintiff SULIT**

### DEMAND FOR JURY TRIAL

Plaintiff ARTHUR D. SULIT hereby demands a jury trial pursuant to Federal Rules of Civil Procedure 38.

Dated: January 5, 2006          By: _____
                                     Ray K. Shahani, Esq.
                                **Attorney for Plaintiff SULIT**