IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR D. SULIT,<br><br>        Plaintiff,<br><br>   v.<br><br>SLEP-TONE ENTERTAINMENT, dba SOUND CHOICE INC., et al.<br><br>        Defendants.<br>                                            / | No. C06-00045 MJJ<br><br>**ORDER DENYING MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY** |

## INTRODUCTION

Before the Court is Defendants Slep-Tone Entertainment dba Sound Choice, Inc. ("Slep-Tone") and Innovative Media Solutions, LLC's ("IMS") (collectively, "Defendants") Motion to Dismiss for Failure to Join a Necessary Party. (Docket No. 86.) Plaintiff Arthur Sulit ("Plaintiff" or "Sulit") opposes the Motion. For the following reasons, the Court **DENIES** the motion.

## FACTUAL BACKGROUND

This action presents a dispute regarding the technology used, and labor expended, in creating mobile telephone ring tones.

Plaintiff Sulit is a Founder, Director, Vice President and Chief Technology Officer of SLS Technology, Inc. ("SLS"), a non-party entity. (Plf.'s Opp. at 3.) SLS is a Mississippi Corporation with its principal place of business in Mississippi. (Plf.'s Supp. Ltr. Brf. at 1.) Sulit has lived in Palo Alto, California from 2001 to the present. (*Id*. at 2.) Sulit entered into a "Cross-Release Covenant" with SLS that limits his ability to assert claims against SLS and the other co-founders of

SLS. (Plf.'s Opp. at 2-3.) Sulit also assigned his ownership interest in three software codes and their respective copyrights to SLS. (Plf.'s Opp. at 4; Defs.' Mem. of P. & A. Exh. 3.) These codes include the "SnipNMail software code" ("SnipNMail"), "CD Ringbacks software code" ("Ringbacks") and "SnipnSend software code" (SnipnSend"). (Plf.'s Opp. at 4.)

Defendant IMS contracted with SLS to develop a software program for use on an internet website. (Defs.' Mem. of P. & A. at 2.; Exh. 1.) Sulit provided the programming for IMS under this contract. (*Id*. at 3.) Defendants contend that Sulit spent a significant amount of time attempting to provide the contracted-for services, but did not satisfactorily perform under the contract and IMS had to hire a third party to complete the project. (*Id*.) Defendants further contend that IMS and Sulit never formed a contractual relationship, written or oral. (*Id*.) Sulit, on the other hand, alleges that he and Defendants formed an oral contract providing compensation for the services he rendered and an equitable ownership interest in economic proceeds earned from Sulit's intellectual property. (Complaint at 13.) Sulit maintains that he relied on Defendants and their co-conspirators' promises of remuneration both for disclosure of his intellectual property (code and methodology) and for time spent. (*Id*. at 6.)

Defendants contend that the third party they hired to complete the software project created a completely distinct software program written in a completely different computer language than the language used by SLS. (Defs.' Mem. of P. & A. at 3.) Sulit, on the other hand, asserts that in September of 2005 Defendants released a derivative version of Sulit's software that included components developed by Sulit. (Complaint at 5-6.)

IMS filed suit against Sulit on September 22, 2005, in the District of South Carolina, alleging copyright infringement of its website www.easyringtonemaker.com and unfair competition. (Defs.' Mem. of P. & A. at 2.) That action was dismissed and re-filed in the Western District of North Carolina, then transferred to the Northern District of California. (*Id*.)

Sulit then filed an action against Slep-Tone, IMS and other individual defendants. (*Id*.) The Court related the two cases and later, by Defendants' motion, the Court dismissed the individual defendants and several of the causes of action asserted by Plaintiff. (*Id*.) Plaintiff's remaining causes of action against Slep-Tone and IMS are for copyright infringement, declaratory relief,

2

defamation, breach of contract, and common counts.

Defendants now seek to join SLS as a party or, if it is not feasible to join SLS, then to dismiss the action because SLS is an indispensable party.

**LEGAL STANDARD**

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) for a party's failure to join persons whose presence is needed for a just adjudication under Federal Rule of Civil Procedure 19. Rule 19, "establishes a two-step analysis for determining who should be joined in a given action." *See Aguilar v. Los Angeles County,* 751 F.2d 1089, 1091 (9th Cir. 1985). "The first step, set forth in subsection (a), determines which persons should be joined, if joinder is feasible." *Id.* at 1091-92. "The second step of the Rule 19 analysis, set forth in subdivision (b), determines whether the action should be dismissed or proceed without the party if joinder is not feasible." *Id.* at 1092. "The inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application." *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir. 1990) (internal citation omitted). The moving party has the burden to demonstrate that the nonparty is a "person needed for just adjudication" under Rule 19(a) or is indispensable under Rule 19(b). *Id.*

Rule 19(a) provides, in relevant part, that a party shall be joined in the action if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). As a general rule, courts construing contracts require that parties to the contract be joined to litigation that may impair their rights under that contract. *See Wilbur v. Locke*, 423 F.3d 1101, 1113 (9th Cir. 2005); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) (noting that parties to a contract are indispensable in an action to set aside a contract). Usually, assignees are also necessary parties. *See* 4 James Wm. Moore et al., Moore's Federal Practice § 19.06[1] (3d ed. 2007).

After the court determines if a party should be joined, the court must also determine if

3

joinder is feasible. Fed. R. Civ. P. 19(a) & (b). It is feasible to join a party if the party is subject to service of process and joinder of the party will not deprive the court of jurisdiction over the subject matter of the action. *See* Fed. R. Civ. P. 19(a).

If, however, a necessary party under Rule 19(a) "cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable." *See* Fed. R. Civ. P. 19(b). "Indispensable parties under Rule 19(b) are persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *EEOC v. Peabody,* 400 F.3d 774, 780 (9th Cir. 2005). The court should consider the following factors to determine if a party is indispensable:

> [1] to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; [2] the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; [3] whether a judgment rendered in the person's absence will be adequate; [4] whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

**ANALYSIS**

Defendants assert that SLS is a necessary party which the Court may feasibly join. (Defs.' Mem. of P. & A. at 7.) Specifically, Defendants contend that the Court cannot award complete relief to the parties without SLS because Defendants had a contractual relationship with SLS, not Sulit, and Sulit assigned the software code at issue to SLS. (Defs.' Mem. of P. & A. at 7-8.) In addition, resolving this matter without SLS exposes Defendants to multiple liabilities and inconsistent obligations because SLS may seek to enforce its contractual or intellectual property rights in a separate action. (Defs.' Mem. of P. & A. at 8-9.) Defendants further assert that it is feasible to join SLS in this action. If, however, the Court finds that it is not feasible to join SLS, Defendants argue that the Court should dismiss the action because SLS is indispensable. (Defs.' Mem. of P. & A. at 9-10.)

Plaintiff does not object to a finding that SLS should be joined as a third-party defendant.

4

1  (Plf.'s Opp. at 2, 4.) Plaintiff did not previously join SLS in this suit because of the "Cross-Release
2  Covenant," which limits his ability to sue SLS directly. (Plf.'s Opp. at 2-3, Exh. B.) Plaintiff does,
3  however, contend that complete relief can be granted between the existing parties as to all claims
4  and thus appears to object to a dismissal of the action based on the finding that SLS is an
5  indispensable party. (Plf.'s Opp. at 4-7.)

**1.    SLS is a Necessary Party to This Action.**

The Court reviews the parties' assertions as they relate to each of Plaintiff's claims in the instant action.

First, the Court considers the breach of contract claim. It is uncontested on the record before the Court that Defendants contracted with SLS for Plaintiff's services. While Plaintiff asserts that he also had an oral contract with Defendants, he does not argue that his alleged oral contract with Defendants was the only contract at issue or that it precludes a contract between SLS and Defendants. In their Reply, Defendants submit exhibits that include a chain of emails written by Plaintiff.[1] Plaintiff, in these exhibits, repeatedly refers to SLS' involvement in this dispute.[2] On the record before the Court, therefore, it appears that the contract between SLS and Defendants is implicated in the resolution of the contract dispute between the parties in this action. Defendants, therefore, may not be accorded complete relief and may be liable for multiple or inconsistent obligations if SLS is not a party to the action. Thus, Defendants have met their burden of showing that SLS is needed for the just adjudication of this action.

Next, the Court reviews of the defamation and common counts claims. Plaintiff's defamation claim alleges that Defendants made false and defamatory statements concerning

---

[1] Plaintiff, in an unauthorized sur reply, asserts that the Court cannot consider the contents of the emails because they were part of compromise negotiations and are thus excluded under Federal Rule of Evidence 408. Defendants, in an unauthorized response to Plaintiff's sur reply, contend that the email is offered not to prove the validity, invalidity or amount of a disputed claim, but is submitted purely in support of Defendants' argument that, under Rule 19, this case cannot proceed without SLS as a party. The Court agrees with Defendants that Rule 408 does not prohibit use of settlement evidence that is not offered to prove liability or invalidity of the claim or its amount. *See Cohn v. Petsmart*, 281 F.3d 837, 840 n.3 (9th Cir. 2002) (holding that Rule 408 is inapplicable to settlement evidence that is offered to prove the amount in controversy and not to prove liability or invalidity of the claim or its amount).

[2] In these emails, Plaintiff notes, inter alia, that "Michael [SLS co-director] acknowledged that SLS owed me back-pay for all of my work on [Defendants'] ERM," "[t]he entire conflict originated from Michaels' a) deception/overselling and b) defrauding me of my pay," and that "Michael is currently in Breach of Contract with me as follows . . . I have not yet been paid for my entire time out here." (*See* Racine Decl., Exh. A 1:24-25, 2:16-18, Exh. B 1:18-19, 35.)

5

Plaintiff, including derogatory statements regarding his abilities as a programmer and businessman. (Complaint at 12.) Plaintiff's common counts cause of action covers Plaintiff's work, labor, services and materials rendered by Plaintiff at the request of Defendants. (*Id.* at 14.) While Plaintiff argues that Defendants have not adequately shown that these causes of action are related to a claim or interest of SLS, Defendants argue that both causes of action stem from the same relationship between Defendants and SLS to which Plaintiff's breach of contract claim pertains. (Defs.' Reply at 6.) The Court finds Defendants' argument persuasive. The common counts cause of action stems from much of the same conduct that is alleged in the breach of contract claim. The defamation claim is, by Plaintiff's own admission, related to the actions of both the Defendants and SLS. (*See* Defs.' Reply, Exh. B at 2:11-13.) The just adjudication of these claims, therefore, requires the presence of SLS.

Finally, the parties dispute the relevance of SLS to the copyright claim and related declaratory relief claim. Defendants contend that Plaintiff assigned the software code at issue to SLS. Thus, Plaintiff does not own the property at issue and, if SLS is not a party to this action, Defendants may be subject to later legal actions by SLS. Plaintiff concedes that he assigned his ownership interest in SnipNMail, Ringbacks and SnipnSend software codes to SLS. (Plf.'s Opp. at 4.) Plaintiff, however, asserts that the copyrights at issue in this action are two other software codes: "Easy Ringtone Maker Website" and "Desktop Windows CD Ripper Ringtone Snipper - Sender" (aka "Snip tunes or Ringeroo"). (*Id.* at 5.) Plaintiff contends that Defendants have not shown that either of the software codes at issue are incorporated in, or derived from, the code Plaintiff assigned to SLS. Defendants claim that Plaintiff, in prior communications, admits that SLS has rights implicated by any resolution or determination of ownership of the disputed software. (Defs.' Reply at 7.) In the emails submitted by Defendants, Sulit told Defendants that he "can help [Defendants] achieve full ERM ownership, incontestably 'free and clear', because I guarantee you, that issue is not 'clean' yet between SLS, me and IMS." (Defs.' Reply, Exh. A, 3:1-3.) While Defendants believe this statement supports their arguments, the Court is not convinced of the relevance or import to assign to this statement. It is not clear that the ownership Plaintiff refers to in this email relates to the software at issue in this action. The Court, however, need not determine this issue

6

because SLS' involvement in the breach of contract claim, discussed above, is dispositive.

In sum, without SLS in the present action, the parties may not be accorded complete relief and Defendants may be liable for multiple or inconsistent obligations. Defendants have, therefore, met their burden of showing that SLS is a necessary party under Rule 19(a).

**2.     It is Feasible to Join SLS to This Action.**

Defendants further assert that it is feasible to join SLS in this action because such joinder will not defeat the jurisdiction of the Court. (Defs.' Mem. of P. & A. at 7.) Defendants and Plaintiff agree that this action, involving copyright and related claims, is before this court on federal question jurisdiction and the joinder of SLS does not destroy that jurisdiction. In addition, the parties agree that SLS is a viable entity and is subject to service of process in California. (Defs.' Mem. of P. & A., Exh. B.) Personal service on an individual while the person is physically present in a forum satisfies due process. *See Burnham v. Superior Ct.*, 495 U.S. 604, 619 (1990). In California, a corporation may be served by delivery of a summons and complaint to, inter alia, a vice president of the corporation. *See* Cal. Code Civ. Proc. § 416.10(b). Sulit, who is a Founder, Director, Vice President and Chief Technology Officer of SLS, lives and works for SLS in Palo Alto, California and may be served in the forum. The Court therefore finds that, on the record currently before the Court, Defendants have met their burden of showing that the Court may feasibly join SLS to this action.

Having found that SLS should be joined under Rule 19(a) for the just adjudication of this action and that it is feasible to join SLS, the Court need not determine if SLS is an indispensable party under Rule 19(b).

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss for Failure to Join a Necessary Party. The Court further **ORDERS** Defendant to join SLS as a party to this action. Defendant shall have 30 days from the entry of this order to effect compliance with this Order.

**IT IS SO ORDERED.**

Dated: November 19, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

7